UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LIONEL PARKER                                             CIVIL ACTION

VERSUS                                                    NO. 10-4131

DR. KIMBERLY POUNDS ET AL.                                SECTION "B" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Lionel Parker, is a convicted prisoner currently incarcerated in the Orleans Parish prison system ("OPP"). He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman and Dr. Kimberly Pounds. Parker alleges that, while incarcerated in OPP, he received constitutionally inadequate medical care concerning a hernia. He seeks monetary compensation and injunctive relief in the form of medical care and transfer to a Department of Corrections facility. Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On December 16, 2010, I conducted a telephone conference in this matter. Participating were plaintiff pro se; Blake Arcuri, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny. Record Doc. Nos. 14 and 15.

## THE RECORD

Parker confirmed that he asserts a single claim in this case that he has not received adequate medical care for his hernia condition while incarcerated in OPP. He testified

that he is currently incarcerated in OPP based upon his guilty plea on December 18, 2009 to a theft charge, for which he is serving a four-year prison sentence. He stated that he was incarcerated in OPP on this charge on December 15, 2009, only three days before his guilty plea.

Parker stated that he is 54 years old. He said that well before his arrest, some time in the second half of 2008, he was diagnosed with a hernia at Touro Infirmary in New Orleans. He testified that he could not remember the name of the person who diagnosed him with a hernia at that time. Parker said he was rushed to the hospital emergency room due to pain, and he was seen by a nurse, who laid him on the floor, found that his hernia had "dropped," and taught him how to "push it back up." He testified that he never returned to a doctor about his hernia and never had an operation, but that since his arrest in December 2009, a year or more later, it has not been adequately addressed in OPP.

Parker said that in 2008 his hernia problems began while he was at work and he began to experience pain, such that he could not walk, so he was rushed to the hospital. He said that on that day, the emergency room nurse showed him how to address the problem if it happened again, but he did not stay in the hospital for further treatment at that time and he was not then seen by a doctor. He said that between his examination at Touro in 2008 and his arrest in December 2009, he had a few additional problems with the hernia, but he addressed it himself by "pushing it back up because I knew what to do."

Parker confirmed that he has reviewed the OPP medical records that I ordered the sheriff to produce, Record Doc. Nos. 6, 16, that he has reviewed them, and that they are accurate. He confirmed the report in his medical records indicating that, upon his arrest, he went through a medical screening process, during which he was asked questions by a jail official about his medical and physical conditions, and that he did not mention anything about a hernia, because "it wasn't worrying me at the time, I didn't feel the need, which I should have, but I didn't, but since it's been worrying me back here, I've been wanting to do something about it because half the time I can't even get out my bed" and the condition is painful.

Parker confirmed the reference in his medical records that the first notation of a request he made of jail officials for medical attention for his hernia occurred on or about July 26, 2010, when his condition began to worry him, although he thought he may have made some requests earlier. He confirmed the allegation in his written submissions that defendant, Dr. Kimberly Pounds, examined him at OPP but "misdiagnosed" the problem. Record Doc. No. 8 at ¶ 3. He confirmed the indication in the medical records that Dr. Pounds examined him at OPP on or about August 10, 2010, but Parker complained that she did not feel the hernia in the correct spot. He stated that part of this examination was for hypertension, for which he is receiving treatment at OPP, but that he also brought up the hernia problem with Dr. Pounds at that time. "She didn't feel in the proper spot where I was telling her" the hernia existed, "and she said that it wasn't a hernia," he said.

Parker speculated that Dr. Pounds might have thought "I was trying to get fresh," so she simply did not examine the correct spot sufficiently and made a misdiagnosis that he does not have a hernia.

Parker testified that he knows he has a hernia because that is what he was told by the nurse at Touro Infirmary in 2008. He conceded that he has never been treated by anyone else for this hernia, but said he is familiar with the condition because he had a hernia on his other side that was treated in 1992, while he was incarcerated in the Louisiana State Penitentiary at Angola, Louisiana.

Asked what problems he is currently experiencing as a result of this condition, he said he can barely walk "because it keeps on dropping, I have to lay down so much to keep it pushed up, and people have to . . . get my food and bring it to my bed for me, and it's hard for me to take a shower because I barely can stand up half of the time."

At the end of the hearing, I ordered a physical examination of plaintiff by another OPP doctor pursuant to Fed. R. Civ. P. 35. Record Doc. No. 14. Since that time, the examination has been conducted, and I have received and reviewed defense counsel's response to the Rule 35 order and the medical report of Dr. Samuel Gore, OPP medical director, concerning plaintiff's Rule 35 examination. Record Doc. Nos. 17 and 18. The report indicates that Parker has been reexamined, that he has now been "diagnosed with a small, early hernia. Diagnosis was not obvious, based on its small size and [Parker's]

prior hernia surgery, but was palpable," and that he has been referred to the LSU General Surgery Clinic and prescribed pain medication.  Record Doc. No. 18-1.

## ANALYSIS

### I.     STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite

statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim of violation of his constitutional rights for which relief under Section 1983 may be granted, even under the broadest reading.[1]

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

II.     MEDICAL CARE

Parker complains that he received constitutionally inadequate medical care for his hernia. Parker was a convicted prisoner at all relevant times about which he complains. In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate

8

health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997). The deliberate indifference standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (additional citations omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In this case, Parker's allegations negate any inference that defendants acted with deliberate indifference. Initially, a hernia does not automatically present a serious medical need for purposes of constitutional analysis. Evidence presented in other courts has established that

> there are three types of hernia situations: (1) a hernia that is strangulated, which is a medical emergency mandating surgery; (2) a hernia that is reducible yet so painful or debilitating that surgery is required; and (3) a hernia that is reducible and, given the dangers and risks inherent in any operation, can be treated through non-surgical means.

9

Johnson v. Doughty, 433 F.3d 1001, 1014 (7th Cir. 2006); see also Williams v. First Corr. Med., 377 F. Supp. 2d 473, 476 (D. Del. 2005) (plaintiff failed to show serious medical need when defendant physician attested that "plaintiff's hernia is 'very small,' 'reducible' and that plaintiff has not shown any signs of complications"). The current record indicates that Parker's hernia, at this time, at most, is "a small, early hernia," which was difficult to diagnose. It cannot be concluded today that it presents a serious medical need for purposes of constitutional analysis.

Even assuming, however, without concluding, that Parker's hernia was serious, Parker's testimony and the verified medical records establish that jail personnel were not deliberately indifferent to his medical condition in the constitutional sense. Parker has alleged facts, confirmed by his testimony and his medical records, that negate any inference of deliberate indifference by jail officials. He was seen by a doctor concerning the condition. She examined him but did not diagnose any hernia problem. He has since been reexamined, pursuant to my Rule 35 order, and a "small, early hernia," diagnosis of which "was not obvious," was found.

Under these circumstances, it cannot be inferred that jail personnel were deliberately indifferent to plaintiff's condition. While it is clear from his allegations and testimony that he is not satisfied with the speed or quality of his medical care, and that he experienced some delay in his initial treatment, no finding of deliberate indifference can be made based on this record.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted). No such showing has been made on the current record. A mere misdiagnosis of a condition that is difficult to discern upon examination does not rise to the level of medical "deliberate indifference."

Contentions like Parker's that amount to a disagreement with the quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted); see id. (active treatment of prisoner's serious medical condition that ultimately resulted in death does not constitute the requisite deliberate indifference, even if treatment was negligently administered); see also Estelle, 429 U.S. at 107 (The "question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . ."); Corte v. Schaffer, 24 F.3d 237, 1994 WL 242793, at *1 (5th Cir. 1994)) (Contrary to plaintiff's

11

allegation that he had received "no treatment" because he believed he needed a referral to a gastroenterologist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel more than 100 times and received numerous gastrointestinal tests and a chest x-ray, with all results being within a normal range.); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993) (Prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Varnado v. Lynaugh</u>, 920 F.2d 320, 321 (5th Cir. 1991) (Plaintiff, who was 18 months post-surgical implantation of hip prosthesis, who complained of pain in his hip and who was ultimately diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip.").

In addition, mere delay in receiving care is not in and of itself a constitutional violation. <u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir. 2006); <u>Mendoza</u>, 989 F.2d at 195; <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. <u>Wilson</u>, 501 U.S. at 298. No such showing can be made in this case in light of the extensive medical care Parker has received during his incarceration.

Plaintiff's complaint in this case about his medical care for his hernia condition fails to state a claim of violation of his constitutional rights sufficient to obtain relief

under Section 1983 because he cannot establish "deliberate indifference" under the applicable constitutional standard.

### III. LIABILITY OF SHERIFF GUSMAN

Parker makes no claim that Sheriff Gusman was personally involved in any of the alleged acts or omissions upon which his claims are based. "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrections Corp., 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006). Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115. "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio,

444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)). In the instant action, plaintiff has failed to establish either that defendant was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of defendants and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which defendant [Sheriff Gusman] can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983. Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

"To hold a supervisory official liable for the acts of a subordinate, Parker must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir.1998). To state a failure to protect claim under § 1983, Parker must show that he is incarcerated under

conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. <u>Neals v. Norwood</u>, 59 F.3d 530, 533 (5th Cir. 1995). For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." <u>Payne v. Pickett</u>, 246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007). None of the foregoing essential elements of a supervisory liability claim under Section 1983 have been established on this record.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

                    New Orleans, Louisiana, this \_\_\_10th\_\_\_ day of January, 2011.

                                                                       JOSEPH C. WILKINSON, JR.
                                       UNITED STATES MAGISTRATE JUDGE

---

[2] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.